IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| RAMON PEREZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No. 5:22-cv-00364-MTT-CHW |
| GEORGIA DEPARTMENT | : | |
| OF CORRECTIONS, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## ORDER AND RECOMMENDATION

This case is before the Court on *pro se* Plaintiff Ramon Perez's motion for default judgment (Doc. 52) and Defendant Foster's motion to set aside default. (Doc. 61). The parties appeared for a hearing on April 16, 2024. (Docs. 59, 70). Based on the evidence presented at the hearing and the following findings of fact and conclusions of law, it is hereby **ORDERED** that Defendant's motion to set aside default (Doc. 61) be **DENIED**, and it is **RECOMMENDED** that Plaintiff's motion for default judgment (Doc. 52) be **GRANTED**, that judgment be entered in favor of Plaintiff, and that Plaintiff be awarded compensatory damages in the amount of $1000.

Procedural History

Plaintiff, a state inmate, filed a complaint pursuant to 42 U.S.C. § 1983. (Docs. 1, 10). Following screening, his claim for deliberate indifference to a serious medical need against Defendant Foster for confiscating Plaintiff's crutches was allowed to proceed for further factual development. (Docs. 18, 28). The incident underlying the claim occurred in

1

July 2020 when Plaintiff was a Baldwin State Prison. (Docs. 1, 10). The Clerk of Court issued a waiver of service for Defendant Foster and sent it to Baldwin State Prison. (Docs. 19, 20). The waiver was returned unexecuted with a note "[return to sender], unable to forward." (Doc. 27). The Clerk of Court re-issued the service paperwork, and a deputy U.S. Marshal was assigned to serve Defendant personally. (Docs. 31, 32). On July 7, 2023, service was made by a deputy U.S. Marshal at Defendant's current workplace, the Special Management Unit of Georgia Diagnostic and Classification Prison and not at Baldwin State Prison where the original waiver was sent. *See* (Docs. 19, 20, 27, 33). As discussed below, Defendant did not personally receive service of the summons and complaint, but he expressly permitted another person to accept service and sign on his behalf.

After Defendant Foster failed to respond to Plaintiff's complaint, default was entered, and Plaintiff was directed to file a motion for default judgment. (Doc. 51). Plaintiff filed a motion for default judgment and a declaration in support. (Docs. 52, 53). Before a hearing on the default judgment was scheduled, defense counsel entered his appearance (Doc. 57). A hearing on Plaintiff's motion for default judgment was scheduled (Doc. 59). Defendant subsequently moved to set aside the default (Doc. 61) and filed an answer to the complaint. (Doc. 62). A hearing was held as to both motions on April 16, 2024.

## Findings of Fact and Conclusions of Law

*Defendant's Motion to Set Aside Default*

At the April 16, 2024 evidentiary hearing, the Court first addressed Defendant's motion to set aside default. Defendant Foster's testimony was consistent with his affidavit attached to the motion. (Doc. 61-2). Defendant testified that at the time of the incident

underlying Plaintiff's complaint, he was a lieutenant at Baldwin State Prison (BSP). (Hearing Transcript, Doc. 70, p. 8). He transferred from BSP to another prison before being assigned to the Special Management Unit (SMU). (*Id*., p. 7-8). The waiver of service was sent to BSP and returned unexecuted, although Defendant was employed with Georgia Department of Corrections ("the Department"). (Doc. 27). The Department of Corrections makes no effort to forward mail, including judicial mail, to employees who have been transferred from one facility to another or to former employees. Because the request for waiver was not returned, the U.S. Marshals Service was assigned to serve Defendant personally. (Docs. 31, 32). On July 7, 2023, the deputy marshal assigned to serve Plaintiff arrived at the SMU to serve Defendant, but Defendant was not yet at work. (Doc. 70, p. 9). The supervisor called Defendant and told him a deputy marshal was there to serve him. (*Id*.) Defendant expressly authorized his supervisor to accept service on his behalf. (*Id*.) Defendant does not challenge service in this matter and concedes that service was proper under these circumstances pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. (*Id*., p. 19-20).

  Defendant, aware that a process existed for appointment of counsel within the Department of Corrections, assumed that his supervisor would forward the service paperwork according to that process. (*Id.*, p. 10-11). He admitted that he was "just sitting back [and] waiting" for someone to reach out to him. (*Id*., p. 11). Because of Defendant's inaction and for reasons unknown to defense counsel, this case was not picked up by the Georgia Attorney General's office until March 2024 (*Id*., p. 12), seventeen months after Plaintiff commenced suit, eleven months after service was ordered in this case, and eight

3

months after Defendant was personally served. Defendant argued that despite this length of delay, it would still be proper for the Court to set aside the default because the law disfavors default, the oversight was not willful, Defendant has meritorious defenses, and Defendant had not been prejudiced. (*Id*., p. 12-14, 21-24). Under the circumstances, and as explained at the hearing, setting aside the default is not warranted in this case. (*Id*., p. 25-30).

Defaults are viewed with disfavor, and there is a "strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). Rule 55(c) of the Federal Rules of Civil Procedure provides that courts may set aside any entry of default for "good cause," which generally requires the consideration of factors such as: "whether the default was culpable or willful, whether setting [the default] aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951–952 (11th Cir. 1996).

The testimony at the hearing shows that Defendant would have potentially meritorious defenses, including exhaustion and statute of limitations defenses, and that his failure to answer the suit was not willful. The law disfavors defaults, but this presumption is not absolute. Testimony at the hearing indicated that the State of Georgia has procedures for Department of Corrections employees to receive representation in Section 1983 actions, but those procedures are not reliable. Ultimately, individuals[1] who receive process from

---

[1] Suits under Section 1983 are against individual officers, not against the State or state agencies. When Congress passed Section 1 of the Ku Klux Act of 1871, it did not abrogate state sovereign

4

United States Courts are responsible for protecting their own interests. By turning a blind eye and simply waiting for the process to work, Defendant culpably failed to take the Court's summons seriously. For the above reasons, Defendant has failed to show good cause to set aside the default. Defendant's motion to set aside default (Doc. 61) is **DENIED** and Defendant's answer (Doc. 62) is hereby **STRICKEN** from the record.

Moreover, there must be some accountability for the refusal of the Department of Corrections to forward a request for waiver of service from a federal court, especially when the Defendant still worked for the Department, and for the administrative oversight that occurred after personal service. This practice unnecessarily increases costs and places state employees at risk of default.[2] Pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, Defendant Foster is **ORDERED** to pay $175.85, to compensate for the expenses incurred in making service, within 21 days of this order.

*Plaintiff's Motion for Default Judgment*

The remaining surviving claim following screening of Plaintiff's complaint is that Defendant Foster was deliberately indifferent to a serious need when he confiscated Plaintiff's crutches in July 2020. (Doc. 70, p. 30, 42). Plaintiff injured his knee on March

---

immunity or authorize *respondeat superior* suits. The Court is aware that in most cases the State offers some level of indemnification and representation to officers subject to such suits, but as a matter of law the interested party is the individual officer.

2  Similar administrative failures have resulted in defaults in a number of prisoner cases before this Court in the past two years. *See, e.g., Thomas v. Cowens*, Case No. 5:22-cv-12 (CAR); *McCray v. White*, Case No. 5:22-cv-94 (TES); *Burden v. Smith*, Case No. 5:22-cv-247 (MTT); *Perez v. Foster*, Case No. 5:22-cv-364 (MTT); *Ford v. Jefferson*, Case No. 5:23-cv-19 (MTT); *Dorsey v. Whittington*, Case No. 5:23-cv-89 (TES); *Kennedy v. Thompson*, Case No. 5:23-cv-125 (MTT); *Johnson v. Smith*, Case No. 5:23-cv-229 (MTT).

31, 2020. (*Id.*, p. 42). Plaintiff was provided a knee immobilizer and pain medications, but the injury did not require surgery. (*Id.*, p. 49). Plaintiff testified that he was prescribed crutches, which is confirmed by his medical record. (Doc. 1-1, p. 10; Doc. 70, p. 31). Plaintiff reported to medical believing that he was going to receive new "boots" (the rubber bottoms) for his crutches, but instead Defendant Foster met him there and took the crutches from Plaintiff, leaving Plaintiff to make his way back to the dorm with the help of other inmates. *See, e.g.*, (Doc. 70, p. 34-35, 42, 43, 47). Plaintiff testified that he told Captain Sanford that Defendant took the crutches, but he received no response. (*Id.*, p. 43).

Defendant testified that medical staff requested his assistance retrieving Plaintiff's crutches because they believed he would not return them willingly. (*Id.*, p. 58, 63). Defendant's testimony was not credible, and it is contradicted by a document submitted by the defense, signed by Vernon Speight, stating that "Medical has not instructed Security to remove crutches from inmate Ramon Perez." (Doc. 67, p. 26). Defendant testified that Vernon Speight was the health services administrator for the prison. (Doc. 70, p. 66). His statement was submitted as part of the response to Plaintiff's grievance.

Plaintiff testified that for five days after his crutches were taken, he struggled around the dorm before eventually slipping and falling. (Doc. 70, p. 32, 34, 44). This fall injured his right knee, which did require surgery. (*Id.*, p. 32, 41, 51-52). Plaintiff testified that he believes he fell and injured his right knee because he did not have his crutches. *See* (*Id.*, p. 32, 42).

Due to Defendant's default, the only question remaining before the Court is the issue of damages. Although liability has been admitted as a matter of law, Plaintiff must still

6

prove that Defendant's confiscation of his crutches caused his alleged injuries. Plaintiff has failed to show that Defendant Foster's confiscation of his crutches was the proximate cause or cause-in-fact of his subsequent fall and the injury to his right knee. Therefore, Plaintiff is not entitled to damages for injuries to his right knee arising from the fall that occurred at least 5 days following the encounter with Defendant.

Plaintiff did explain, however, that he suffered discomfort from having to make his way from the dorm to mealtime and other areas within the prison without the crutches. Plaintiff admitted that he did not file a sick call or follow-up between the day his crutches were taken and day he fell. (Doc. 70, p. 44); *see also* (Doc. 67, p. 2) (grievance submitted in August 2020). When Plaintiff was examined in August 2020 after he fell and hurt his right knee, he reported only moderate pain in the left knee, and the physical exam revealed no pain or tenderness in the left knee over the fracture site. (Doc. 68, p. 27-29). This suggests that the left knee injury was not exacerbated or worsened by the loss of his crutches. Any pain or discomfort that can be attributed to the loss of the crutches meets the more than *de minimis* threshold, but only slightly. It is therefore **RECOMMENDED** that Plaintiff be awarded damages in the amount of $1000 and that judgment be entered in his favor pursuant to Rule 55 of the Federal Rules of Civil Procedure.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4.  The District Judge shall

make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED**, this 23rd day of July, 2024.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge